## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| JOSE L. ANDRADE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:21-cv-00223 |
| | § | |
| SHELLPOINT MORTGAGE SERVICING, | § | |
| LLC, | § | With Jury Demand Endorsed |
| | § | |
| Defendant. | § | |

## COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiff Jose L. Andrade ("Plaintiff"), by and through counsel, for his Complaint against Defendant Shellpoint Mortgage Servicing, LLC ("Defendant" or "Shellpoint"), states as follows:

### I. INTRODUCTION

1.       Defendant engaged in willful, malicious, deceptive, and harassing actions against Plaintiff in furtherance of its efforts to illegally collect on debt from him when it was legally uncollectible because it was subject to the discharge injunction in force and effect as a result of Plaintiff's Chapter 13 bankruptcy case.  Defendant's actions at issue include: 1) calling Plaintiff on his cell phone and 2) misreporting the debt to the credit bureaus.

2.       Specifically, Plaintiff claims Defendant violated: 1) Tex. Fin. Code § 392.001 *et seq.,* known as the Texas Debt Collection Act ("TDCA"); 2) the common law prohibiting invasion of privacy; 3) the Federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA"); and 4) the discharge injunction of the United States Bankruptcy Court for the Northern District of Texas, Dallas Division.  Plaintiff seeks to recover from Defendant actual, statutory, and punitive damages, and legal fees and expenses.

## II. PARTIES

3.      Plaintiff is a natural person residing in Collin County, Texas and a "consumer," as defined in the TDCA, Tex. Fin. Code § 392.001(1), and FDCPA, 15 U.S.C. § 1692a(3).

4.      Defendant is a foreign limited liability company that may be served by delivering a summons to its registered agent, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

5.      Defendant is a "creditor," "debt collector," and/or "third-party debt collector" under the TDCA, Tex. Fin. Code §§ 392.001(3)(6) and (7), and FDCPA, 15 U.S.C. §§ 1692a(4) and (6).

6.      The debt Defendant was attempting to collect from Plaintiff was a "consumer debt" and/or "debt," as defined by Tex. Fin. Code § 392.001(2) and FDCPA, 15 U.S.C. § 1692a(5).

7.      Defendant is a furnisher of consumer credit information to Trans Union, LLC ("TransUnion"), Equifax, Inc. ("Equifax"), and Experian Information Solutions, Inc. ("Experian") (collectively the "Credit Reporting Agencies" or "CRAs").

## III. JURISDICTION AND VENUE

8.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1334 and 1367 and 15 U.S.C. § 1692k(d).

9.      Venue is proper this district because Defendant conducts business in this district, Plaintiff filed his bankruptcy case in this district, and the conduct complained of occurred in this district.

## IV. FACTUAL ALLEGATIONS

**A.      Plaintiff Filed a Bankruptcy Case, Surrendered the Collateral Property, and Received a Discharge of His Personal Liability for the Subject Mortgage Debt.**

10.     On January 16, 2013, Plaintiff filed Chapter 13 bankruptcy in case number 13-30205-sgj13 ("Bankruptcy Case") in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division ("Bankruptcy Court").

**1)  Plaintiff Included Information About the Account and Collateral in His Schedules Filed with His Bankruptcy Petition.**

11.  On Schedule "D," filed with his bankruptcy petition, Plaintiff listed a debt to Green Tree Servicing Loan ("Green Tree"), account number xxxx3526 (the "Account"), as a secured claim.

12.  A true and correct copy of relevant excerpts of Plaintiff's Schedule "D" is attached hereto as Exhibit "A."

**2)  Plaintiff Provided Notice of His Surrender of the Collateral Property with His Bankruptcy Petition.**

13.  Also, on January 16, 2013, Plaintiff filed his Chapter 13 Plan providing for the surrender of the real property collateral located at 9867 County Road 1079, Princeton, TX 75407 (the "Property").  The Chapter 13 Plan was confirmed on June 27, 2013.

14.  A true and correct redacted copy of Plaintiff's Chapter 13 Plan is attached hereto as Exhibit "B" and the Confirmation Order is attached as Exhibit "C."

**3)  Notice was Provided to Green Tree of Plaintiff's Bankruptcy Case and the Automatic Stay Prohibiting Creditors and Debt Collectors from Contacting Plaintiff.**

15.  On or about January 19, 2019, the Bankruptcy Noticing Center for the Bankruptcy Court sent a copy of the "Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors and Deadlines" ("341 Notice") to Green Tree, by first class mail.  The 341 Notice warned all creditors, in conspicuous language, against violating the automatic stay imposed by 11 U.S.C. § 362.  The United States Postal Service did not return the 341 Notice sent to Green Tree, creating a presumption it was received by Green Tree.

16.  On February 15, 2013, Green Tree filed its Proof of Claim, claiming a debt secured by the Property of $53,952.83.

17.　　A true and correct redacted copy of Green Tree's Proof of Claim is attached hereto as Exhibit "D."

**4)　　The Subject Debt on the Account was Discharged as to Plaintiff's Personal Liability.**

18.　　On February 12, 2018, the Bankruptcy Court issued an order granting Plaintiff a discharge ("Discharge Order"). The Discharge Order followed Official Form 318, including the explanatory language contained therein. The Discharge Order discharged Plaintiff from any liability for the debt created by the Account.

19.　　Included with the Discharge Order was an explanation of the general injunction prohibiting any attempt to collect discharged debts, warning all creditors, in conspicuous language: "**Collection of Discharged Debts Prohibited.** The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor… A creditor who violates this order can be required to pay damages and attorney's fees to the debtor."

**5)　　Green Tree Received Notice of Plaintiff's Discharge and the Explanation About the Discharge Injunction, Permanently Prohibiting Anyone from Taking Collection Activity Against Plaintiff on the Account.**

20.　　On February 14, 2018, the Bankruptcy Noticing Center mailed a copy of the Discharge Order to Green Tree by first class mail. This mailing, which was not returned, constituted notice to all creditors and their successors of the discharge granted in Plaintiff's Bankruptcy Case and the replacement of the automatic stay of 11 U.S.C. § 362 with the discharge injunction imposed by 11 U.S.C. § 524(a).

21.　　A true and correct redacted copy of the Discharge Order as mailed by the Bankruptcy Noticing Center is attached hereto as Exhibit "E."

22.     At no time during the pendency of Plaintiff's Bankruptcy Case did Green Tree or any other person or entity object to or dispute the details or completeness of the claim regarding the Account listed on Schedule "D" nor did they object to the surrender of the Property in Plaintiff's Chapter 13 Plan.

23.     At no time did Plaintiff reaffirm the debt on the Account with any person or entity.

24.     At no time did the Bankruptcy Court declare the debt on the Account to be non-dischargeable.

6)      **After the Discharge of the Debt in Plaintiff's Bankruptcy Case, Defendant Violated the Discharge Order and Attempted to Collect the Discharged Debt from Plaintiff Personally and Made Harassing and Offensive Contacts with Him.**

25.     Sometime in April 2020, more than two years after Plaintiff received discharge of the debt in his Bankruptcy Case, the servicing of the Account was transferred to Defendant, along with the servicing records, which put Defendant on notice of Plaintiff's bankruptcy and the discharge of the debt.

26.     Following the August 22, 2018 entry of the Discharge Order, Defendant engaged in prohibited debt collection activity against Plaintiff on the Account by calling Plaintiff and misreporting the Account on his credit reports to harass, coerce and deceive Plaintiff into paying the discharged debt or to take actions to financially benefit Defendant on the Account, to his detriment.  Plaintiff told each caller that it was a rental property with a tenant living there, that he had no interest in the Property, and not to contact him in the future as the debt has been discharged.

27.     In furtherance of its attempts to collect on the discharged debt from Plaintiff *in personam* and coerce payment from him, Defendant reported inaccurate, negative and misleading information to the CRAs about the status of the Account to be included in Plaintiff's credit files and credit reports.  On or about June 30, 2020, Defendant misreported to all the CRAs the status of the Account as open with a balance, and payable in monthly installments of $578.00 per month.

Each of the reports also fail to disclose that the debt was included in Plaintiff's bankruptcy case and was discharged.

28.     True and correct redacted copies of relevant portions of Plaintiff's October 5, 2020 credit reports from TransUnion, Equifax and Experian showing the misreporting are attached hereto as Exhibits "F," "G," and "H."

29.     On July 30, 2020, Plaintiff participated in a telephone conference with a representative of Defendant and Allison from Informative Research on behalf of Plaintiff's prospective mortgage lender, Churchill Mortgage.  The conference was for the purpose of asking Defendant to stop reporting the Shellpoint Account on Plaintiff's credit report since the debt had been discharged.  After a thorough discussion of the issue, Defendant's representative refused to update its reporting to reflect the bankruptcy and the discharge of the Account.  As a result, Plaintiff was unable to refinance his home.

30.     On July 31, 2020, a representative from Defendant called Plaintiff on his cell phone and left a message.  The message advised: "… This is Hugh Rubretta from Shellpoint Mortgage Serving.  Shellpoint Mortgage Servicing is a debt collector.  This is an attempt to collect a debt, any information obtained will be used for that purpose.  Please call us at 1(866) 317-2347 Monday through- Friday from 8 a.m. to 10 p.m. Eastern time.  Thank you from Shellpoint Mortgage Servicing."

## V.   GROUNDS FOR RELIEF - COUNT I

## TEXAS FINANCE CODE – TEXAS DEBT COLLECTION ACT (TDCA)

31.     Plaintiff repeats, re-alleges, and incorporates by reference all previous Paragraphs above as if fully rewritten here.

32.     Defendant has violated the Texas Finance Code in numerous ways, including, but not limited to, the following:

a)     Tex. Fin. Code § 392.301(a)(8) prohibits Defendant from taking an action prohibited by law.  Inasmuch as the bankruptcy discharge injunction prohibits anyone from attempting to collect debts discharged in bankruptcy and the common law protects Plaintiff's privacy rights, Defendant's actions also violated the TDCA;

b)     Tex. Fin. Code § 392.304(a)(8) prohibits misrepresenting the character, extent, or amount of Plaintiff's debt.  Defendant misrepresented to the credit bureaus that  there were monthly payments due and owing by a specific date, and that the Account, which had been discharged, was past due and owing post-discharge, were to deceive Plaintiff into paying the discharged debt.  These were misrepresentations of the character, extent or amount of the subject debt, in violation of the TDCA; and

c)     Tex. Fin. Code § 392.304(a)(19) prohibits Defendant's use of false representations or deceptive means to collect a debt; for the reasons stated in the preceding paragraphs, Defendant intentionally tried to coerce or deceive Plaintiff into paying the debt by calling him and by reporting the debt as open on his credit reports, while Defendant knew the Account was discharged in Plaintiff's bankruptcy, rendering the debt legally uncollectible from Plaintiff *in personam*.

33.     Under Tex. Fin. Code Ann. § 392.403, Defendant's actions make it liable to Plaintiff for actual damages, statutory damages, costs, and reasonable attorney's fees.  Also, Plaintiff's injuries resulted from Defendant's malice, actual fraud, and/or willful and intentional misconduct, entitling Plaintiff to punitive damages.

34.     Because of Defendant's conduct, Plaintiff was forced to hire counsel to pursue this action, and Plaintiff's recoverable damages include his reasonable attorney's fees incurred in prosecuting this claim.

## VI.  GROUNDS FOR RELIEF - COUNT II

### INVASION OF PRIVACY

35.     Plaintiff repeats, re-alleges, and incorporates by reference all previous Paragraphs above as if fully rewritten here.

36.     At all pertinent times, Plaintiff had a reasonable and lawful expectation not to be contacted and harassed by Defendant post-discharge, when Plaintiff had surrendered and

permanently vacated the Property prior to receiving his bankruptcy discharge.  Thus, Defendant's calling him and reporting the debt as open to the credit bureaus were invasions of Plaintiff's privacy rights.  These wrongful acts by Defendant caused injury to Plaintiff.

37.    Defendant's wrongful acts were invasions of Plaintiff's privacy rights and caused injury to Plaintiff which resulted in extreme emotional anguish, loss of time and inconvenience. Plaintiff's injuries resulted from Defendant's malice, which entitles Plaintiff to exemplary damages under Texas Civil Practice and Remedies Code §41.003(a).

## VII.  GROUNDS FOR RELIEF- COUNT III

### FAIR DEBT COLLECTION PRACTICES ACT

38.    Plaintiff repeats, re-alleges, and incorporates by reference all previous Paragraphs above as if fully rewritten here.

39.    The Fair Debt Collection Practices Act ("FDCPA") is a comprehensive statute which prohibits a catalog of activities in connection with the collection of debts by third parties. *See* 15 U.S.C. § 1692 *et seq*.  The FDCPA imposes civil liability on any person or entity that violates its provisions, and establishes general standards of debt collector conduct, defines abuse, and provides for specific consumer rights.  *See* 15 U.S.C. § 1692k.  The operative provisions of the FDCPA declare certain rights to be provided to or claimed by debtors, forbid deceitful and misleading practices, prohibit harassing and abusive tactics, and proscribe unfair or unconscionable conduct, both generally and in a specific list of disapproved practices.

40.    In particular, the FDCPA broadly enumerates several practices considered contrary to its stated purpose, and forbids debt collectors from taking such action.  The substantive heart of the FDCPA lies in three broad prohibitions.  First, a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  15 U.S.C. § 1692d.  Second, a "debt collector may not use any false,

deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.  And third, a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. § 1692f.  The FDCPA is designed to protect consumers from unscrupulous collectors, whether or not there exist a valid debt, broadly prohibits unfair or unconscionable collection methods, conduct which harasses, oppresses or abuses any debtor, and any false, deceptive or misleading statements in connection with the collection of a debt.

41.    In enacting the FDCPA, the United States Congress found that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, to marital instability, the loss of jobs, and to invasions of individual privacy."  15 U.S.C. § 1692a.  Congress additionally found existing laws and procedures for redressing debt collection injuries to be inadequate to protect consumers.  *See* 15 U.S.C. § 1692b.

42.    Congress enacted the FDCPA to regulate the collection of consumer debts by debt collectors.  The express purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to ensure that debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692e.

43.    The FDCPA is a strict liability statute, which provides for actual and statutory damages upon the showing of a single violation.  *See Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62-3 (2d Cir. 1993); *see also Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232 (5th Cir. 1997).  "Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages."  *Russell v. Equifax A.R.S.*, 74 F.3d 30 (2d Cir. 1996); *see also Gearing v. Check Brokerage Corp.*, 233 F.3d 469 (7th Cir. 2000)

(holding unintentional misrepresentation of debt collector's legal status violated FDCPA); *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993).

44.     The FDCPA is a remedial statute, and therefore must be construed liberally in favor of the debtor.  *Sprinkle v. SB&C Ltd.*, 472 F. Supp. 1235 (W.D. Wash. 2006).  The remedial nature of the FDCPA requires that courts interpret it liberally.  *Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162 (9th Cir. 2006).  "Because the FDCPA, like the Truth in Lending Act (TILA) 15 U.S.C. §1601 et seq., is a remedial statute, it should be construed liberally in favor of the consumer."  *Johnson v. Riddle*, 305 F.3d 1107 (10th Cir. 2002).

45.     The FDCPA is to be interpreted in accordance with the "least sophisticated consumer" standard.  *See Brown v. Card Serv. Ctr*, 464 F.3d 450, 453 fn1 (3d Cir. 2006); *Graziano v. Harrison,* 950 F.2d 107, 111, fn5 (3rd Cir. 1991).  The FDCPA was not "made for the protection of experts, but for the public - that vast multitude which includes the ignorant, the unthinking, and the credulous, and the fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced."  *Id*.  The least sophisticated consumer standard serves a dual purpose in that it ensures protection of all consumers, even naïve and trusting, against deceptive collection practices, and protects collectors against liability for bizarre or idiosyncratic interpretations of collection notices.  *See Clomon*, 988 F.2d at 1318.

46.     To prohibit deceptive practices, the FDCPA, at 15 U.S.C. § 1692e, outlaws the use of false, deceptive, and misleading representations or means in connection with the collection of any debt and sets forth a non-exhaustive list of certain *per se* violations of false and deceptive collection conduct.  *See* 15 U.S.C. § 1692e(1)-(16).

47.     The collection actions at issue of Defendant by engaging in the subject false credit reporting, described hereinabove, violate 15 U.S.C. §§ 1692e(2)(A) and 1692f(1).

48.     Defendant's actions described hereinabove are the manifestations of their practices and policies to ignore the provisions of the Bankruptcy Code applicable to them and illegally collect or attempt to collect pre-petition debts from unsophisticated debtors.     Specifically, Defendant violated:

§ 807.  False or misleading representations, (A) the character, amount, or legal status of any debt; … 8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed. …; and 10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

## VIII.  GROUNDS FOR RELIEF- COUNT IV

### VIOLATION OF THE DISCHARGE INJUNCTION

49.     Plaintiff repeats, re-alleges, and incorporates by reference all previous Paragraphs above as if fully rewritten here.

50.     At all material times, Defendant had actual knowledge of Plaintiff's Bankruptcy Case and of the discharge of the debt on the Account.

51.     Defendant attempted to collect from Plaintiff personally on the discharged debt or to induce Plaintiff to act in a way that would benefit the Defendant, as evidenced by the telephone calls and misreporting to the CRAs that the debt was still due and owing when the Property had already been surrendered and the debt discharged.

52.     Defendant's actions were willful acts in furtherance of its efforts to collect the discharged debt from Plaintiff in violation of the discharge injunction imposed by 11 U.S.C. § 524(a).  Further, Defendant's acts were harassing and attempts to coerce and deceive Plaintiff to pay the discharged debt.  Defendant's failure to comply with the aforesaid laws, despite

Defendant's being on notice of Plaintiff's Bankruptcy Case and discharge and the effect of Plaintiff's discharge, illustrates Defendant's utter contempt for federal law and the discharge injunction.

53. The actions of Defendant constitute harassment and coercive and/or deceptive actions taken to collect a discharged debt from Plaintiff in gross violation of the discharge injunction imposed by 11 U.S.C. § 524(a)(1)-(3).

54. Defendant knowingly and willfully violated the orders and injunctions of the Bankruptcy Court issued in the bankruptcy filed by Plaintiff. After this prima facie showing by Plaintiff, the duty falls on Defendant to show, as its only defense, a present inability to comply with the orders and injunctions of the Bankruptcy Court, which inability must go beyond a mere assertion of inability. Failing a showing by Defendant of its present inability to comply with the orders and injunctions of the Bankruptcy Court, Plaintiff must prevail on his claims, and Defendant must be held liable for knowingly and willfully violating the orders and injunctions of the Bankruptcy Court. Any defense put forth by Defendant in this proceeding can only constitute a good faith exception, as no other reasonable explanation can be made for the conduct and actions of Defendant. Any allegation of a good faith exception should not be allowed.

55. Specifically, Defendant violated the part of the Bankruptcy Court's Discharge Order issued pursuant to 11 U.S.C. § 524(a)(2) that "operates as an injunction against the commencement, or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtors, whether or not the discharge of such debt is waived.

56. There are no exceptions under 11 U.S.C. § 524, other provisions of the United States Bankruptcy Code, or other applicable law that would permit Defendant's conduct, which was in blatant disregard of the discharge injunction.

57.     The orders and injunctions of the Bankruptcy Court cannot be waived, except by way of a properly filed and approved reaffirmation agreement, motion, stipulation or complaint, none of which occurred here.  No waiver of the orders or injunctions of the Bankruptcy Court has occurred.

58.     Also, there is no requirement of mitigation on the part of Plaintiff that is relevant to Defendant's violations of the orders and injunctions of the Bankruptcy Court.  Any burdening of Plaintiff with an obligation to police the misconduct of Defendant would be a complete derogation of the law.  It is well-settled that each party to an injunction or order of the Court is responsible for ensuring its own compliance with the injunction or order and for bearing the cost of compliance.  Any attempt by Defendant to mount such a defense would constitute a collateral attack on the injunctions and orders of the Bankruptcy Court in this proceeding, which is prohibited.  Any such defense put forth by Defendant in this case can only constitute a claim of mitigation, as no other reasonable explanation can be made for the conduct and actions of Defendant.  No defense of failure to mitigate should be allowed.

59.     Plaintiff has been injured and damaged by Defendant's actions, and Plaintiff is entitled to recover judgment against Defendant for actual damages and punitive damages, plus an award of costs and reasonable attorney's fees, for Defendant's violations of 11 U.S.C. § 524 and pursuant to the Court's powers under 11 U.S.C. § 105.

## IX. VICARIOUS LIABILITY/*RESPONDEAT SUPERIOR*

60.     Plaintiff will be able to show, after reasonable discovery, that all actions at issue were taken by employees, agents, servants, or representatives, of any type, for Defendant, the principal, within the line and scope of such individuals' (or entities') express or implied authority, through employment, agency, or representation, which imputes liability on Defendant for all such actions under the doctrine of *respondeat superior* and/or vicarious liability.

## X. DAMAGES

61.     In addition to any damages previously stated hereinabove, the conduct of Defendant has proximately caused Plaintiff damage to his credit causing him to incur one or more credit denials, past and future monetary loss, past and future mental distress, emotional anguish and a discernable injury to Plaintiff's emotional state, and other damages, evidence for all of which will be presented to the jury.  As a result of Defendant's conduct, Plaintiff has suffered anxiety, stress, headaches, insomnia and depression.  In addition, Defendant's illegal reporting of a discharged debt on Plaintiff's credit reports has made it impossible to refinance his home with a considerably smaller monthly payment and interest rate, causing marital discord and continues to put stress on the marriage as it created uncertainty and a feeling of loss of control over his life.  Moreover, dealing with the consequences of Defendant's actions has cost Plaintiff time and mental energy, which are precious to him.

62.     At all relevant times, Defendant knew, and it continues to know, that, pursuant to a discharge order granted by a U.S. Bankruptcy Court, discharged debts are no longer legally collectible, but Defendant made a corporate decision to act knowingly, willfully, maliciously, and contrary to its knowledge of bankruptcy law, to attempt to collect on the debt it knew had been discharged as a result of Plaintiff's Bankruptcy Case.  Defendant had no right to engage in any of its actions at issue.

63.     Plaintiff believes that, after reasonable discovery in this case, he will be able to show that all actions taken by, or on behalf of, Defendant were conducted maliciously, wantonly, recklessly, intentionally, knowingly, and/or willfully, with the desire to harm Plaintiff with the actual knowledge that such actions were in violation of the law.

64.     Plaintiff believes that, after reasonable discovery, he will be able to show that Defendant has been involved in numerous disputes involving complaints about the type of conduct

at issue here; nevertheless, Defendant, intentionally and knowingly, has refused to correct its policies and comply with applicable laws, of which laws it is well-aware.

65.     Plaintiff believes that, after reasonable discovery, he will be able to show that Defendant has engaged in a pattern and practice of wrongful and unlawful behavior, in accordance with its established policies and procedures, with respect to knowingly, willfully, intentionally, and maliciously attempting to collect on debts discharged in bankruptcy.  Accordingly, Defendant is subject to punitive damages, statutory damages, and all other appropriate measures necessary to punish and deter similar future conduct by Defendant.  Moreover, Plaintiff's injuries resulted from Defendant's malice, and/or willful and intentional misconduct, entitling Plaintiff to punitive damages.

66.     Plaintiff believes that, after reasonable discovery, he will be able to show that Defendant's actions at issue were part of Defendant's illegal design, implemented in its policies and procedures, to profit by harassing unsophisticated debtors and collecting debts that had been included and discharged in the debtors' respective bankruptcy cases.

67.     Due to Defendant's conduct, Plaintiff was forced to hire counsel, and his damages include reasonable attorney's fees incurred in prosecuting his claims.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Jose L. Andrade prays the Court:

A.     Enter judgment in favor of Plaintiff and against Defendant for statutory damages, actual damages, costs, and reasonable and necessary attorney's fees for Defendant's violations of the TDCA, Plaintiff's privacy rights, the FDCPA and the discharge injunction;

B.     Find that appropriate circumstances exist for an award of punitive damages to Plaintiff;

C.     Award Plaintiff pre-judgment and post-judgment interest as allowed by law; and

D.      Grant such other and further relief, in law or equity, to which Plaintiff might show he is justly entitled.


                                  Respectfully submitted,


                                  /s/ James J. Manchee
                                  James J. Manchee
                                  State Bar Number 00796988
                                  jim@mancheelawfirm.com
                                  MANCHEE & MANCHEE, PC
                                  5048 Tennyson Parkway, Suite 250
                                  Plano, Texas 75024
                                  (972) 960-2240 (telephone)
                                  (972) 233-0713 (fax)

                                  **COUNSEL FOR PLAINTIFF**


                                  **<u>JURY DEMAND</u>**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: February 1, 2021                /s/ James J. Manchee
                                       James J. Manchee